CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 25 2014

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CONNIE L. BOWMAN, ) | |
| ) | Civil Action No. 7:13-CV-00167 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | Hon. James C. Turk |
| ) | Senior United States District Judge |
| Defendant. ) | |

Plaintiff Connie L. Bowman ("Plaintiff" or "Bowman") brought this action for review of Defendant Carolyn W. Colvin's ("the Commissioner") final decision denying her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles XVI and II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f. On appeal, Bowman claims that the Administrative Law Judge ("ALJ") failed to properly evaluate all of her impairments, particularly her non-exertional impairments, and that his determination that Bowman could perform substantial gainful activity is not supported by substantial evidence.

This Court has jurisdiction over the action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Both Bowman and the Commissioner filed motions for summary judgment. ECF Nos. 12, 17. The Court heard argument on the motions, see ECF No. 20, and they are now ripe for disposition.

In her motion for summary judgment, Bowman contends that the Commissioner erred in concluding she was not disabled. She offers four primary arguments in support of this contention. First, she claims that the ALJ erred because he "fail[ed] to probe the significance of Bowman's non-exertional impairments." ECF No. 13 at 8. In particular, she posits that the

1

medical records show that she suffers from "severe emotional problems that would preclude her from dealing with work stresses, dealing with co-workers, and dealing with the public." Id. Second, Bowman argues that the ALJ committed error in "substituting [his] own medical opinion for the opinions of highly qualified mental health professionals." Id. Third, she submits that the ALJ "failed to analyze the cumulative effect of all of [her] medical problems." ECF No. 13 at 9. Fourth and finally, she faults the ALJ for his conclusion that her failure to attend numerous medical appointments indicated that her "symptoms have not been as limiting as she has alleged." ECF No. 13 at 9 (quoting R. 34). Bowman contends that the ALJ's conclusion erroneously failed to "take into account the symptoms of social phobia and panic disorder with agoraphobia," from which Bowman suffers. ECF No. 13 at 9.

For the reasons stated below, the Court finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Commissioner's Motion for Summary Judgment, ECF No. 17, is **GRANTED** and Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

I. **STANDARD OF REVIEW**

When reviewing the Commissioner's final decision, the Court is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner reached those findings through application of the correct legal standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted); Hancock, 667 F.3d at 472. If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for the

Commissioner's, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Accordingly, "[i]n reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

Bowman bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983);

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural Background

Bowman was born in 1981, R. 43,[2] and was only twenty-seven years old on her alleged disability onset date of February 22, 2009. R. 215. At all relevant times, therefore, she was a "younger person" under the Act. 20 C.F.R. §§ 404.1563(c), 416-963(c). She has a high school education and previously worked as a cashier (a light, unskilled job), a deli worker (a light, unskilled job), a grinding machine operator (a heavy, skilled job), and a spinner in a textile factory (a medium, semi-skilled job). R. 50-52, 67-68.

She protectively applied for DIB and SSI on April 14, 2009, alleging disability since February 22, 2009 as a result of "chronic pain in multiple areas, seizures, [and] social anxiety." R. 215-28, 240. Her claim was denied at the initial and reconsideration levels of administrative review. R. 151-56. At a November 28, 2011 hearing before ALJ Benjamin McMillion, both Plaintiff (who was represented by counsel) and a Vocational Expert ("VE") testified. See R. 45-79 (transcript from hearing). The ALJ issued his decision on December 13, 2011, finding that

---

[2] The Administrative Record has been filed at ECF No. 8. Herein, the Court cites to specific pages of the Record as "R. ___."

Bowman was not disabled due to her ability to perform a range of light work, with specific additional limitations discussed below. See R. 26; see also generally R. 21-38 (ALJ's decision).

In reaching this conclusion, the ALJ properly utilized the five-step process for determining whether a claimant is disabled. See Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520) (setting forth the five steps). The ALJ first determined that Bowman met the insured status requirements of the Act through March 31, 2012 and that she had not engaged in substantial gainful activity since her alleged onset date through her date last insured. R. 23. At the second step, the ALJ concluded that Bowman had a number of severe impairments, specifically: "chronic lumbar pain; bilateral heel pain; chronic tonsillitis; intermittent tingling and numbness of the hands, resolved by use or shaking; history of one seizure; obesity; mild mitral regurgitation;[3] generalized anxiety disorder; posttraumatic stress disorder; major depressive disorder; and panic disorder." R. 23. He concluded at the third step that none of her impairments or combination of impairments met or medically equaled the severity of any listed impairment. R. 24.

Based on the evidence before him, the ALJ determined that Bowman had the residual functional capacity to "perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can no more than occasionally bend, stoop, crouch, crawl, and climb, can tolerate no more than occasional interaction with the public; and is limited to no more than simple job instructions." R. 26. The ALJ relied on the VE's testimony that this RFC would allow Bowman to perform jobs that existed in significant numbers in the national economy, although it would not have allowed her to perform her past work. R. 36-38. Accordingly, the ALJ concluded Bowman was not disabled under the Act. R. 38.

---

[3] Mitral regurgitation is "[a]n abnormal backward flow of blood from the left ventricle into the left atrium . . ., due to a defect in the mitral valve which controls the opening that separates the two chambers." See J.E. Schmidt, Attorney's Dictionary of Medicine, at M-217 (1999) (hereinafter "Dict. of Med.").

Plaintiff requested Appeals Council review of the ALJ's decision, R. 15, and also submitted additional information in support of her request, including fourteen pages of additional medical records from New River Internal Medicine covering the period May 24, 2011 through December 14, 2012.[4] R. 5. The Appeals Council stated that it considered the additional evidence, but found that it did not provide a basis for changing the ALJ's decision. R. 2. The Appeals Council thus denied Plaintiff's request for review, R. 1, rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Bowman timely filed this Complaint seeking review of the Commissioner's decision.

### B.     Medical and Other Evidence

The ALJ's opinion spent approximately eleven pages laying out the medical evidence in the case and explaining how he arrived at Bowman's RFC. As part of that analysis, he discussed in some detail the various grounds for his finding that Bowman was not entirely credible as to her complaints of pain and limitations, and he also explained why he was giving significant weight to the opinion of Dr. Berry, a psychologist who evaluated Bowman. Rather than repeating that medical evidence in detail here, the Court discusses it below in the context of analyzing Bowman's specific claims.

## III.    DISCUSSION

In her appeal to this Court, Bowman raises four arguments, as noted above. See infra at 1-2. The Court addresses each in turn.

### A.    The ALJ Adequately Considered Bowman's Non-Exertional Impairments.

Bowman's first claim is that the ALJ erred in "failing to probe the significance of Bowman's non-exertional impairments." ECF No. 13 at 8. She argues that her severe emotional

---

[4] The Appeals Council also looked at "psychological reports from Mount Rogers CSB dated October 14, 2012 through January 9, 2013," but did not consider them because they related to a time period after the March 31, 2012, the date Bowman was last insured. R. 2. Bowman does not challenge that finding on appeal.

problems would preclude her from all gainful employment. The Court disagrees.

First, it is worth noting that the ALJ employed the proper analysis in evaluating her mental impairments. Specifically,

> [i]n evaluating mental impairments, the ALJ employs a specific technique that considers four functional areas essential to the ability to work: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings (Psychiatric Review Technique "PRT" findings). 20 C.F.R. §§ 404.1520a, 416.920a (2011). The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) (2011).

Felton-Miller v. Astrue, 459 F. App'x 226, 231 (4th Cir. Dec. 21, 2011) (unpublished). In this case, the ALJ addressed each of the four functional areas and expressly found that claimant had only mild limitation in the first and third (activities of daily living and concentration, persistence, and pace) and moderate difficulties in social functioning, and that she had no episodes of decompensation of extended duration. R. 24-25. Bowman does not specifically challenge any of these conclusions, and the Court concludes that they are supported by substantial evidence in the record.

Likewise, the ALJ followed the proper analysis in determining Bowman's RFC. An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 419.945. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

Contrary to Bowman's assertion, the ALJ devoted considerable ink to discussing Bowman's non-exertional impairments and considering their impact on her RFC. See R. 30-33.

7

He looked to and accurately summarized the various records reflecting her mental health treatment for anxiety or depression since approximately 2009. From that date on, she attended numerous counseling sessions, and made varying reports of progress and activity. She regularly denied suicidal and homicidal ideation. R. 30.

She sought hospitalization for her mental health issues twice. The first time was in August 2010, when she was admitted at her request to Cornerstone Crisis Stabilization Unit for one week, due to increased anxiety and depression that she attributed to relationship stressors. She was hospitalized the second time from March 19 through March 25, 2011, after overdosing on Ambien, Prozac, and Lamictal. She said she had been experiencing a lot of conflict with her boyfriend and overdosed after they got into a verbal altercation, although the boyfriend later told treatment providers that Bowman was a "drug abuser" and wanted to go for detox. Upon discharge, she was diagnosed with PTSD, major depression, and a need to rule out "polysubstance dependence." R. 456. She was assessed as having a global assessment functioning ("GAF") score at that time of 50,[5] id., which indicates "serious symptoms or any serious impairment in social, occupational, or school functioning," with examples being that a person has no friends or is unable to keep a job. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th ed. Text Rev. 2000). A score of 50, however, is the least severe score in that category; the next category of lesser, "moderate symptoms" begins at 51. Id.

Several months after Bowman's first hospitalization, Angelia Berry, Psy.D, performed a

---

[5] The GAF Scale is used to rate overall psychological functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev. 2000), with 100 being the most high-functioning. The GAF has been dropped from the Fifth Edition of the DSM, published in 2013, due in part to its "conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM-5 at 16. Despite its shortcomings, the GAF was used by Bowman's providers throughout the relevant period of alleged disability and thus informs the Court's analysis.

consultative psychological evaluation of Bowman and ultimately gave her a GAF score of 55 to 58, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. R. 55-58. Following the second hospitalization, Bowman was seen by Dr. Abeleda, her treating psychiatrist. Less than two weeks after her discharge, Bowman reported being happy and feeling more at ease now that she was away from her boyfriend, she denied suicidal and homicidal ideation, and she reported that counseling had been very helpful. R. 515, 546. During a later follow-up meeting with her case manager in July 2011, moreover, Bowman expressed that she was upset with Dr. Abeleda because the psychiatrist told Bowman she could work. R. 504.

The ALJ found that Bowman's allegations of severe depression and anxiety were not fully credible, explaining:

> Although the claimant has sought treatment for these symptoms, as discussed below, she has failed to show up for numerous appointments, and treatment notes document a generally stable condition. The claimant's functioning deteriorated on two occasions that largely stemmed from conflicts with her boyfriend, but the treatment records show that she recovered relatively quickly. Although the claimant's representative argued at the hearing that the low GAF scores suggest the claimant is mentally precluded from working, the undersigned disagrees. Most of those scores were given during or immediately following the periods of deterioration caused by relationship stress, yet as noted, the claimant recovered relatively quickly from these episodes, and subsequent treatment notes reflect that she stabilized and was able to function. Moreover, the claimant's own admitted daily activities and the objective findings in the record do not support such low GAF scores. Outside of her brief hospitalizations, mental status examinations have revealed mostly mild abnormalities and even at times have been normal. The claimant has described significant problems with social functioning, yet she has reported being able to go shopping, go out with friends, go to the post office, run errands, and attend church. Treating psychiatrist De. Abeleda also apparently felt the claimant was able to work. Greater weight is given to Dr. Berry's GAF score [of 55-58] because it is most consistent with the overall record, which shows that the claimant would be able to function with only occasional public interaction and simple job instructions. Such limitations are reflected [in the RFC given].

9

R. 33. The Court thus concludes that the ALJ gave due consideration to Bowman's mental impairments and that the limitations in the RFC were consistent with this consideration.

It is also worth emphasizing that the opinions of both consultative examiners of Bowman—Ms. Berry and Robert Stephenson, M.D.—as well as the opinions of the state agency medical and psychological consultants—all support the ALJ's conclusion as to the effect of Bowman's impairments. Notably, none of these sources indicated that Bowman's impairments— mental or physical—preclude her from working altogether. See R. 426 (Berry); R. 315 (Stephenson); R. 118-119, 143 (Julie Jennings, PhD, psychological consultant, upon reconsideration); R. 139-141 (Dr. Sadler, medical consultant, upon reconsideration).

Bowman has been repeatedly diagnosed, at various times, with depression, social phobias, and PTSD. She has also received treatment, in the form of counseling and medication, to treat those illnesses, and has been able to function to a large degree with those treatments. In short, while Bowman claims that she suffers from "severe emotional problems that would preclude her from dealing with work stresses, dealing with co-workers, and dealing with the public," ECF No. 13 at 8, the ALJ's decision that she is not as limited in her functioning as she claims is supported by substantial evidence.

### B. Substantial Evidence Supports the ALJ's Decision As to the Weight To Be Given the Mental Health Professionals Who Treated or Evaluated Bowman.

Bowman's second contention is that the ALJ improperly substituted his own medical opinion for the opinions of mental health professionals. Bowman posits that the medical records from Mount Rogers Community Health, Dr. Osemobor, and Dr. Abeleda show that she suffers from severe emotional problems that would prevent her from working. The Court is unpersuaded by Bowman's argument.

The ALJ's role is to assess all of the medical evidence before him, including the opinion

evidence from various medical sources. The ALJ gave "significant weight" to the opinions of the consultative examiner, Ms. Berry, and he explained why. R. 36. He also correctly noted that none of Plaintiff's treating physicians offered an opinion that she was not capable of working. Instead, there was evidence to suggest that her primary mental health treatment provider for much of the relevant period, Dr. Abeleda, believed Bowman could return to work, R. 33, an opinion that Bowman reported made her upset. R. 504.

Again, while it is true that the medical records show limitations in Bowman's social functioning and ability to deal with stress, and while she clearly has mental impairments, there is substantial evidence in the record supporting the ALJ's decision that these impairments would not preclude her from all gainful employment.

### C. Substantial Evidence Supports the ALJ's RFC.

Bowman's third argument consists of a conclusory assertion that the ALJ "failed to analyze the cumulative effect of all of Bowman's medical problems." ECF No. 13 at 9. She does not point out any specific physical ailment that the ALJ neglected to address or analyze and, as noted, the ALJ's decision contained a lengthy recitation of Bowman's physical and mental health histories. Bowman does not identify in her brief what specific additional evidence that the ALJ failed to consider her would render her disabled. Particularly in the absence of a more specific argument on this point, the Court declines to reverse the ALJ's decision on this ground. Rather, as noted previously, the ALJ adequately addressed Bowman's limitations and his RFC is supported by substantial evidence.

### D. Substantial Evidence Supports The ALJ's Credibility Determination.

Bowman's final argument is that the ALJ erred in concluding that Bowman's failure to attend numerous medical appointments indicated that Bowman's "symptoms have not been as limiting as she has alleged." ECF No. 13 at 9 (quoting R. 34). Instead, she essentially claims that

the reason for the missed appointments was her social phobias and panic disorder. ECF No. 13 at 9. While it is certainly possible that Bowman's social phobias or panic disorder led to her missing some appointments, her credibility is nonetheless an issue that is for the ALJ to determine.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

As previously noted, the ALJ gave numerous reasons for discounting Bowman's own assertions of the severity of her symptoms. While his reasons included the fact that she had missed many appointments, R. 33, there were other valid reasons he did not find her credible, as well. For example, he noted that she regularly reported engaging in a number of activities that showed she was not so limited in her functioning. R. 33 These included caring for her son, shopping, going out with friends, running errands and attending church. R. at 33, 35. Also, the ALJ noted Bowman was not always an accurate historian, and that certain inconsistencies in the records show that she might not be entirely reliable. R. 34-35. Finally, the ALJ found it significant that "none of the claimant's doctors has placed limitations on the claimant or stated that she is unable to work." R. 35. Thus, even if her missed appointments were not considered, there is still substantial evidence supporting the ALJ's determination as to Bowman's credibility.

## IV. CONCLUSION

The Court has determined that the ALJ's decision is supported by substantial evidence.

Therefore, the Court **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 17, and **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 12.

An appropriate Order shall issue this day.

ENTER: This 25th day of April, 2014.

*/s/ James C. Turk*
Hon. James C. Turk
Senior United States District Judge